UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.J., an individual,<br><br>                              Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA;<br>ALEX KAMSI, D.C.; et al,<br><br>                              Defendants. | Case No.:  23-cv-395-W-BLM<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION [DOC. 37]** |

Pending before the Court is the Government's motion for summary judgment or dismissal on grounds that the Court lacks subject matter jurisdiction because Plaintiff's tort claims against the United States do not fall within the limited waiver of sovereign immunity provided by the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671–80.  The Government also moved for partial summary judgment on grounds that Plaintiff's expert witness failed to provide sufficient evidence of the standard of care. Plaintiff opposed the motion, and the Government replied.

The Court decides the matter on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1).  For the reasons provided here, the Court **GRANTS IN PART AND DENIES IN PART** the motion as explained here.  (Doc. 37.)

//

1

I.    **BACKGROUND**

Plaintiff M.J. alleged that her chiropractor repeatedly sexually assaulted her during treatments over approximately two years.   Plaintiff received chiropractic treatment at La Maestra Community Health Center ("La Maestra"), a federally funded health care facility.  Plaintiff was treated there by Alex Kamsi, D.C. ("Kamsi") for several years.  At different points in time while Kamsi was treating Plaintiff, La Maestra learned of two other patients who reported that Kamsi sexually assaulted them.  La Maestra learned of Plaintiff's complaint against Kamsi when it received a letter from Plaintiff's counsel.  During investigations of the other two complaints, Kamsi denied that any of the alleged sexual misconduct occurred.  With respect to Plaintiff's complaint, Kamsi denied all allegations of any sexual misconduct and any negligence related to her care.  (*See Supp'l Table of Exhibits* "*Supp'l TOE*" [Doc. 41-7] at 14–42.)  Accordingly, the central facts regarding the allegations of sexual misconduct and medical malpractice are disputed. The United States moved for dismissal or summary judgment primarily on grounds that the Court lacks subject matter jurisdiction over Plaintiff's claims and for partial summary judgment on grounds that Plaintiff's expert witness testimony is insufficient to survive summary judgment on a medical malpractice claim.

A.    **Procedural Background**

Plaintiff filed her First Amended Complaint ("FAC") on March 23, 2023.  She described four causes of action arising from her alleged sexual abuse during chiropractic treatment.  (*FAC* [Doc. 5].)  On June 7, 2023, the Court granted the parties' joint motion and ordered, in relevant part, that (1) the United States of America is substituted in place of La Maestra as to the FAC's First, Second, and Third Claims, (2) the United States of America is substituted in place of Kamsi as to the FAC's Second and Third Claims for medical negligence, exclusive of alleged acts of sexual misconduct or any acts Kamsi took for his personal benefit outside his duties as a chiropractor at La Maestra, and (3) the FAC's Third Claim for medical negligence brought under 22 U.S.C. § 2702 is dismissed

with prejudice.  (Doc. 14.)  The United States of America was substituted for La Maestra entirely and for Kamsi, in part, under the Federally Supported Health Centers Assistance Act ("FSHCAA"), 42 U.S.C. § 233(g)-(n).  After the Court's June Order, the claims remaining against the United States are Plaintiff's "Claim One" for negligent hiring, supervision, or retention of employee and her "Claim Two" for negligence.  Plaintiff's "Claim Four" for gender violence against Kamsi is not addressed by the parties or by this Court Order.

### B.  **Factual Background**

Alex Kamsi became licensed as a chiropractor in 2003, and his license has been active since.  (*Jt. Stmt. Facts* [Doc. 41-5] at 4.)  La Maestra established a new department offering chiropractic services in 2018.  (*Rodriguez Am. Decl.* [Doc.41-2] ¶¶ 4–5.)[1]  La Maestra interviewed several chiropractic service provider companies and contracted with Chiropractic Service Corps. ("CSC"), a third-party entity to vet and provide one of its independent chiropractors to La Maestra and to supervise that chiropractor's work caring for La Maestra patients.  (*Id.* ¶ 5.)  CSC provided its employee, Kamsi, to La Maestra and

---

[1] Plaintiff objected to the Government's declarations on two grounds.  (Doc. 42.)  First, Plaintiff objected that declarations did not satisfy the language required by 28 U.S.C. § 1746.  Second, Plaintiff objected that the amended declarations (which are identical to the originals except in the amendments' addition of the § 1746 language and the correction of one phrase in Dr. Javier Rodriguez's declaration) are newly presented in reply and therefore may not be considered.  (*Id.*; *see also Sotomayor Decl.* ¶ 3.)  Plaintiff requested the exclusion of all declarations entirely.  Plaintiff's objections are overruled.  Federal Rule of Civil Procedure 56(e) permits the Court to "give an opportunity to properly support or address [a] fact," even assuming the Government failed "to properly support an assertion of fact . . . as required by Rule 56(c)."  Also, section 1746 does not prohibit the Court from permitting the amendment here.  *See Silverman v. Mendiburu*, 785 Fed. App'x 460 (9th Cir. 2019).  "A declaration need only 'substantially' comport with the model language set forth in 28 U.S.C. § 1746."  *United States v. Backlund* 588 Fed. App'x 525 (9th Cir. 2014) (citing *Commodity Futures Trading Comm'n v. Topworth Int'l Ltd.*, 205 F.3d 1107, 1112 (9th Cir. 2000)). Plaintiff is not prejudiced by the amendment because the amended declarations are in all material respects identical to the originals except for the addition of the section 1746 language Plaintiff identified.  Both the original and amended declarations establish facts necessary for the Court to determine its subject matter jurisdiction which may be considered at any time.  *See Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th Cir. 1995); Fed. R. Civ. P. 56(e).

vouched for its thorough review of him, including background checks and his professional experience in chiropractic diagnosis and treatment. (*Id.* ¶ 6.) On behalf of the clinic, Dr. Javier Rodriguez, who had been La Maestra's Chief Medical Officer since 2018, interviewed Kamsi. (*Id.* ¶¶ 2–3, 6, 9–10.) La Maestra's human resources department conducted two of its own independent background checks of Kamsi, and no negative findings resulted. (*Fernandez Am. Decl.* ¶¶ 6–12.)

Kamsi began providing chiropractic treatment to La Maestra patients at the health clinic on September 28, 2018, as an employee of CSC who was in turn an independent contractor with La Maestra. (*Id.* ¶ 16.) Kamsi's professional service at La Maestra began about one month after accepting employment with CSC. (*Table of Exhibits Part 1* "*TOE 1*" [Doc. 38] at 14; *Supp'l TOE* [Doc. 41-7] at 14–42.) Kamsi's work at La Maestra was supervised both by Dr. Rodriguez and by the CSC supervisor who visited La Maestra occasionally to review Kamsi's patient files and discuss his performance with La Maestra staff. (*TOE 1* at 4.) Neither CSC nor La Maestra provided Kamsi training in the performance of chiropractic treatment, but both provided him training on policies and protocols. (*TOE 1* at 17–18; *Fernandez Decl.* ¶¶ 13–15, 20.) Part of this training was annual training on sexual harassment prevention mandated by La Maestra, including in relationships between doctor and patient. (*TOE 1* at 21–22; *Fernandez Decl.* ¶¶ 14, 20.)

In September 2019, Plaintiff began to suffer from neck and back pain. (*M.J. Decl.* [40-2] ¶ 2.) She sought chiropractic treatment. (*Id.*) Kamsi was the only covered chiropractor within San Diego under Plaintiff's medical insurance. (*Id.*) Plaintiff's first appointment with Kamsi was on or about September 9, 2019. Plaintiff brought her daughter with her to an early appointment because (1) English is not Plaintiff's first language and (2) her daughter speaks English. (*Id.* ¶ 4; *see also Table of Exhibits Part 2* "*TOE 2*" [Doc. 39] at 20.) After that, Plaintiff continued to see Kamsi about every two weeks for chiropractic treatment. (*Id.* ¶ 4.) All communications between Kamsi and Plaintiff were in English, even though Plaintiff's responses were limited to short answers or a few words. (*TOE 1* at 12.) Plaintiff's daughter accompanied Plaintiff for about the

23-cv-395-W-BLM

first six visits, and Plaintiff also attended her daughter's separate appointments with Kamsi, except the first.  (*M.J. Decl.* ¶ 4; *TOE 1* at 30.)

After this point, the parties dispute most of the material facts regarding what occurred between Plaintiff and Kamsi during treatment.  Plaintiff declared that Kamsi began to make inappropriate comments early in the treatment: he told her daughter that Plaintiff smelled good and had a "nice body;" he asked her daughter if Plaintiff was "available" and made comments to Plaintiff's daughter about having sex before marriage. (*M.J. Decl.* ¶ 4.)  Plaintiff also felt uncomfortable when Kamsi batted his eyes toward her or "would softly rub my exposed skin from my elbow to my shoulder" during chiropractic manipulations.  (*Id.*)

Plaintiff declared that Kamsi's untoward conduct became more serious over time. On or about January 17, 2020, Plaintiff attended her appointment alone and there Kamsi urged her to get massages as an additional treatment.  She declared that Kamsi instructed her to meet him at an off-site address unknown to Plaintiff and not affiliated with La Maestra.  (*Id.* ¶ 5.)  Plaintiff's daughter looked up the address and texted Kamsi to confirm that the address was the location of another medical clinic.  (*Id.* ¶ 6.)  When she received no response, Plaintiff's daughter told Kamsi that Plaintiff would not attend. (*Id.*)  At the next regular appointment, Kamsi again told Plaintiff to get a massage and gave her a second, unknown address that was not affiliated with La Maestra.  (*Id.*) Plaintiff discovered the address was a three-bedroom apartment and did not ever go to the second address.  (*Id.*)

Plaintiff averred that over time Kamsi began to have her lie on her stomach with her legs raised and to stroke, squeeze, and touch her buttocks, explaining that he was "doing his job," when she questioned him.  (*Id.* ¶ 7.)  Plaintiff declared that Kamsi put his hands between her legs, twice groping her vagina.  (*Id.*)  While manipulating Plaintiff's shoulders, Plaintiff declared that Kamsi placed his hands on her breasts.  (*Id.*)  Plaintiff also declared that Kamsi continued to bat his eyes at her and to hug her at the end of appointments.  (*Id.*)

Plaintiff declared that on or about February 12, 2020, Kamsi hypnotized her into a deep sleep. (*Id.*) She declared that she remembered no other details except that she awoke to Kamsi hugging her and touching her back. (*Id.*) Plaintiff also declared that Kamsi tried to financially manipulate her by claiming he was underpaid and requesting an additional cash payment of $230 from her. (*Id.* ¶ 8.) Kamsi testified that he received $200 from Plaintiff during about August 2020, for his birthday, and that he returned the money about a year later, upon her demand, after attempting to decline the money originally. (*TOE 1* at 47–55.)

On about October 1, 2020, La Maestra became aware that G.R., a patient of Kamsi, accused him of trying to "forcefully kiss" her, after luring her to the same off-site location that he told Plaintiff to go for a massage. (*Rodriguez Depo.* [Doc.40-3] at 19–23; *Rodriguez Am. Decl.* [Doc.41-2] ¶¶ 17–21.) On October 2, 2020, Dr. Rodriguez spoke with Kamsi, who confirmed that he provided chiropractic services outside of La Maestra, at the location where G.R. alleged the assault occurred. According to Dr. Rodriguez, until that time, no one at La Maestra knew that Kamsi had a practice outside of La Maestra. (*Rodriguez Am. Decl.* [Doc.41-2] at ¶¶ 24–26.) La Maestra's policies do not prohibit health care providers from working outside of La Maestra or in private practice, but the policies do require providers disclose those facts and prohibit providers from referring patients to themselves at another location. (*Id.* at ¶ 27.) Dr. Rodriguez counseled Kamsi accordingly. (*Id.* at ¶ 28.) On October 5, 2020, Dr. Rodriguez and La Maestra's Vice President met with Kamsi regarding G.R.'s allegations, and there Kamsi admitted to referring patients to a facility unrelated to La Maestra and "flatly denied the allegation that he tried to kiss a patient." (*Id.* at ¶¶ 29–31.) In response to G.R.'s allegations, La Maestra (1) instructed Kamsi not to make gestures with patients that could be misconstrued, (2) counseled Kamsi on appropriate behavior; (3) had Kamsi sign an agreement that he would not refer patients to himself at a facility outside La Maestra, (4) followed up with G.R.; (5) recommended that G.R. see a different chiropractor, and (6) accepted G.R.'s requests that she remain anonymous and that no

6

complaint be pursued.  (*Id.* at ¶¶ 33–41.)  Kamsi told La Maestra that the police contacted Kamsi about G.R.'s report.  (*Id.* at ¶¶ 40–46.)  La Maestra concluded the investigation after finding that (1) the police did not continue their investigation with La Maestra, (2) no other witnesses existed to contact and (3) G.R. was satisfied with La Maestra's inquiry and conclusion to the investigation.  (*Id.*)  Dr. Rodriguez testified that based on these facts, La Maestra determined in its discretion that Kamsi would continue to provide chiropractic services.  (*Id.* at ¶ 46.)  On November 16, 2020, shortly after G.R.'s report, La Maestra hired Kamsi as its employee.  (*Rodriguez Am. Decl.* at ¶ 50; *see also TOE 1* at 24, 49–57, 63–68, 79.)

Later, La Maestra learned that a second patient, L.S., made allegations of sexual misconduct against Kamsi.  In March 2022, La Maestra received notice from Blue Cross Blue Shield of California ("BCBS"), stating that L.S. accused Kamsi of sexually assaulting her during treatment at La Maestra on or about December 15, 2021.  (*Rodriguez Depo.* at 36–40; *Plaintiff's Exh. C* [Doc.40-3] at 43–46.)  L.S. made her original report to her insurer.  (*Id.*)  La Maestra investigated the report and learned that Kamsi was on medical leave on the alleged date and was having medical treatment around that time, did not have any appointments at La Maestra on that date, denied the allegations, and wrote a detailed written response, denying L.S.'s allegations.  (*Rodriguez Am. Decl.* at ¶¶ 54–58.)  La Maestra never attempted to contact L.S. to directly seek her report.  (*Rodriguez Depo.* [Doc. 40-3] at 36, 38–40.)  Dr. Rodriguez closed La Maestra's investigation into L.S.'s allegations based upon these facts: (1) BCBS did not follow-up for any additional information from La Maestra, (2) in Dr. Rodriguez's experience, managed care plans typically do not give notice of a conclusion of the investigation, (3) Kamsi saw no patients at La Maestra on the alleged date, and (4) L.S. never made a report to La Maestra.  (*Rodriguez Am. Decl.* at ¶ 59.)  Dr. Rodriguez testified that based on these facts, La Maestra determined in its discretion that the matter was concluded.  (*Id.* at ¶ 60.)  At his deposition, in response to the question, "And you took [Kamsi's] word for it again?" Dr. Rodriguez testified, "Yes."  (*Rodriguez Depo.* at 39.)

23-cv-395-W-BLM

According to the operative complaint, Plaintiff "did not disclose the maltreatment right away because it was not culturally appropriate for her to speak out about it and she was afraid, and she still needed medical treatment." (*FAC* ¶ 31.) On July 18, 2022, La Maestra became aware of Plaintiff's complaints against Kamsi, when it received a letter from her attorneys indicating a claim would be filed. (*Rodriguez Decl.* ¶ 62; *TOE* 172–178.) According to Dr. Rodriguez, he began an investigation into the matter. Upon reviewing Plaintiff's medical chart, he saw a note from Plaintiff's psychologist at La Maestra that on July 28, 2022, Plaintiff told her psychologist that she was inappropriately touched by a male medical provider whose name was not disclosed and that she had given the doctor $230. (*Rodriguez Decl.* ¶¶ 63–66.) On August 2, 2022, Dr. Rodriguez confronted Kamsi, who denied all claims of sexual misconduct, claimed that the money was a birthday present from Plaintiff, and said that his treatment of Plaintiff was over. (*Id.* ¶¶ 67–68, 70–72.) La Maestra placed Kamsi on administrative leave on August 5, 2022, pending further investigation. (*Id.* ¶ 74.) On September 29, 2022, Kamsi resigned from La Maestra before completion of the investigation. (*Id.* ¶ 75.)

## II.   **LEGAL STANDARD**

The Government moved for dismissal under Federal Rule of Civil Procedure 12(b)(1) or for summary judgment under Federal Rule of Civil Procedure 56(c). Rule 12(b)(1) allows a defendant to file a motion to dismiss for lack of subject matter jurisdiction. While a claim of sovereign immunity is technically not a pure jurisdictional issue, it is "quasi jurisdictional" and a "Rule 12(b)(1) [motion] is still the proper vehicle for invoking sovereign immunity from suit." *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015). When evaluating sovereign immunity on a Rule 12(b)(1) motion, the Court must start with the presumption that the United States is immune from suit, and it is Plaintiff's burden to show that the United States has expressly consented to be sued in this way. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

1    Summary judgment is appropriate under Rule 56(c) where the moving party

2  demonstrates the absence of a genuine issue of material fact and entitlement to judgment

3  as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322,

4  106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  A party seeking summary judgment always

5  bears the initial burden of establishing the absence of a genuine issue of material

6  fact.  *Celotex*, 477 U.S. at 323.  The moving party can satisfy this burden in two ways: (1)

7  by presenting evidence that negates an essential element of the nonmoving party's case;

8  or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to

9  establish an element essential to that party's case on which that party will bear the burden

10  of proof at trial.  *Id.* at 322-23.  "Disputes over irrelevant or unnecessary facts will not

11  preclude a grant of summary judgment."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

12  *Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

13    If the moving party meets its initial burden, the nonmoving party cannot defeat

14  summary judgment merely by demonstrating "that there is some metaphysical doubt as to

15  the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

16  574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Triton Energy Corp. v. Square D*

17  *Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) (citing *Anderson*, 477 U.S. at 252) ("The mere

18  existence of a scintilla of evidence in support of the nonmoving party's position is not

19  sufficient.").  Rather, the nonmoving party must "go beyond the pleadings and by her own

20  affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,'

21  designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex*, 477

22  U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  When making this determination, the court

23  must view all inferences drawn from the underlying facts in the light most favorable to

24  the nonmoving party.  *See Matsushita*, 475 U.S. at 587.  "Credibility determinations, the

25  weighing of evidence, and the drawing of legitimate inferences from the facts are jury

26  functions, not those of a judge, [when] ruling on a motion for summary

27  judgment."  *Anderson*, 477 U.S. at 255.

28

"The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

## III.    ANALYSIS

The Government requested dismissal of (1) Plaintiff's Claim One for negligent hiring, supervision, or retention for lack of subject matter jurisdiction on grounds of sovereign immunity and (2) Plaintiff's Claim Two for negligence for the same reason with respect to specific theories of the claim.

### A.    The FTCA's Waiver of Sovereign Immunity

The Federal Tort Claims Act contains a limited waiver of the federal government's sovereign immunity. *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217–18 (2008) (citing 28 U.S.C. § 1346(b)(1)). Plaintiff bears the burden to identify an unequivocal expression of Congressional waiver of sovereign immunity allowing her negligence claims against the federal government. *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir. 1983) (citing, in relevant part, *United States v. Mitchell*, 445 U.S. 535, 538 (1980)). Absent the United States of America's unequivocally expressed consent to suit, an action against it must be dismissed for lack of jurisdiction. *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985) (citing *Mitchell*, 463 U.S. 206; *Hutchinson v. United States*, 677 F.2d 1322, 1327 (9th Cir. 1982)).

The FTCA is the "exclusive means by which a party may sue the United States for money damages . . . in tort." 28 U.S.C. § 2679. The "district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages [] for injury [] caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment .

. . if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).  An "employee of the Government" includes "officers and employees of any federal agency," but excludes "any contractor with the United States."  28 U.S.C. § 2671; *Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016).  Exceptions to the FTCA's waiver of sovereign immunity "are to be strictly construed."  *Bibeau v. Pac. Nw. Resch. Found., Inc.*, 339 F.3d 942, 945 (9th Cir. 2003) (affirming lack of subject matter jurisdiction over claim for negligent supervision and oversight of scientific experiments as barred by the discretionary function exception).

## B.   The Discretionary Function Exception Deprives the Court of Jurisdiction Over Plaintiff's Claim One for Negligent Hiring, Supervision, or Retention

The United States moved for summary judgment or dismissal on Plaintiff's "Claim One," that La Maestra negligently hired, supervised, or retained Kamsi, on grounds that the decision falls within the discretionary function exception to the FTCA's waiver of sovereign immunity.  The federal courts "lack jurisdiction over any claim to which the [FTCA's] discretionary-function exception applies." *Alfrey v. United States*, 276 F.3d 557, 561 (9th Cir. 2002); 28 U.S.C. § 2680(a).  The Government bears the burden of proving that the discretionary function exception applies.  *Vickers v. United States*, 228 F.3d 949, 950 (9th Cir. 2000) (citing *Sigman v. United States*, 217 F.2d 696, 702 & n.4 (9th Cir. 1992)).  Notwithstanding the Government's burden, the plaintiff "must advance a claim that is facially outside the discretionary function exception" to survive dismissal. *Doe v. Holy See*, 557 F.3d 1066, 1084 (9th Cir. 2009) (citing *Prescott v. United States*, 973 F.2d 696, 702 & n.4 (9th Cir. 1992)).

The discretionary function exception bars claims based on an act or omission of a Government employee, "exercising due care []

exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or *based upon the exercise or performance of the failure to exercise or perform a discretionary function or duty* on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a) (emphasis added).[2]

A two-part test determines if the discretionary function exception applies. The first step evaluates "whether the challenged action involved an element of choice or judgment, for it is clear that the exception 'will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.'" *Vickers v. United States*, 228 F.3d 944, 949 (9th Cir. 2000) (citing *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). If choice or judgment is exercised, the second step looks at whether "that choice or judgment is of the type Congress intended to exclude from liability—that is, whether the choice or judgment was one involving social, economic, or political policy." *Id.* (citing *Gaubert*, 499 U.S. at 324).

### 1.    <u>Element of Judgment or Choice</u>

"When a statute or regulation allows a federal agent to act with discretion, there is a 'strong presumption' that the authorized act is based on an underlying policy decision." *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000) (citing *Gaubert*, 499 U.S. at 324). However, conduct cannot be discretionary if it violates a legal mandate. *Id.* at 1002 (citing *U.S. Fidelity & Guar. Co. v. United States*, 837 F.2d 116 (3d Cir. 1988)). In evaluating whether the federal agent's conduct falls within the discretionary-function exception, the focus is on the "nature of the conduct rather than the status of the actor." *Id.* (citing *Gaubert*, 499 U.S. at 324).

---

[2] The purpose behind the exception is to "prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort." *United States v. Gaubert*, 499 U.S. 315, 323 (1991).

Here, Plaintiff alleged that La Maestra negligently hired, supervised, and retained Kamsi.  (*FAC* at 5–7.)  In support of this cause of action, Plaintiff alleged that (1) Kamsi was unqualified and incompetent, (2) La Maestra failed to have adequate policies in place to ensure safe and medically appropriate care, (3) La Maestra failed to investigate claims of Kamsi's medical malpractice, and (4) La Maestra negligently supervised Kamsi's patient billing and medical documentation and record keeping.  (*Id.* at 7.)  Plaintiff's FAC did not allege or identify a mandatory provision that curtails La Maestra's discretion in hiring, supervising, or retaining Kamsi.  Plaintiff also did not allege that La Maestra failed to investigate a crime or assault, or sexual misconduct.  Instead, Plaintiff alleged that the International Chiropractors Association's code of professional ethics provides standards applicable to Kamsi, including that a chiropractor "shall not take physical, emotional, or financial advantage of . . . any pat[i]ent."  (*FAC* at ¶¶ 34–37.)  Plaintiff alleged that because "La Maestra delegated Plaintiff's medical care to Kamsi" it had a duty to supervise Kamsi.  (*Id.* at ¶ 38.)  La Maestra knew of two other chiropractic patients who reported sexual assault by Kamsi, but Plaintiff's allegations and the evidence before the Court are silent as to any law, rule, or policy applicable to La Maestra that required it to investigate the allegations made by G.R. or L.S. in a particular manner other than the way in which it did.[3]

---

[3] Plaintiff's First Amended Complaint did not allege negligent failure to investigate a crime or sexual misconduct.  (*FAC* at 5–7.)  Even if the Court could read such a claim from the pleading's factual allegations, Plaintiff does not identify a policy, rule, or law that proscribes the way that La Maestra must conduct such an investigation, despite the fact that two other allegations of similar sexual misconduct occurred during Plaintiff's treatment.  *See, e.g.*, *Sabow v. United States*, 93 F.3d 1445, 1451–54 (9th Cir. 1996).  Plaintiff did not allege that La Maestra failed to investigate the allegations of sexual misconduct, and the undisputed evidence demonstrated that it did investigate both reports, even if it failed to independently seek out L.S.'s report of misconduct.  *See Vickers*, 228 F.3d 944 at 953 ("discretion in the conduct of an investigation . . . does not extend to the question of whether to report to superiors or to investigate *at all* an allegation of misuse of Service-issued firearms") (emphasis in original).  Plaintiff instead alleged that La Maestra failed to investigate claims of Kamsi's medical malpractice as part of her claim for negligent hiring, supervision, or retention.  (*FAC* ¶ 41.)  "[T]he discretionary function exception protects agency decisions concerning the scope and manner in which it conducts an

1     In *Vickers v. United States*, the Ninth Circuit addressed the FTCA's discretionary

2  function exception in the context of a claim for negligent supervision or retention of an

3  employee.  228 F.3d at 950.  "[D]ecisions relating to the hiring, training, and supervision

4  of employees usually involve policy judgments of the type Congress intended the

5  discretionary function exception to shield."  *Id.* (holding in part that the discretionary

6  function exception prohibited a negligent supervision and retention claim arising from the

7  sufficiency of handgun qualification or training).  In the Ninth Circuit, claims of

8  negligent hiring, supervision, and training of employees are barred under the FTCA

9  because those decisions "fall squarely within the discretionary function exception."

10  *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000).  Decisions to retain are also

11  categorically discretionary decisions, even in the context of a negligent decision with

12  respect to an employee accused of sexual misconduct.  *Doe v. Holy See*, 557 F.3d 1066,

13  1083-85 (9th Cir. 2009) (explaining that discretionary function in the context of the

14  Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602-1611, closely parallels the

15  exception to the FTCA and concluding that the negligent hiring, supervision, and failure

16  to warn claims were barred).

17     Plaintiff argued in opposition that the Affordable Care Act, 42 U.S.C. § 18114,

18  ("ACA"), specifically prescribed the mandated course of action by La Maestra, thereby

19  removing La Maestra's conduct from the discretionary function exception.  Plaintiff

20  argued that she suffered discrimination on the basis of sex, sexual orientation, gender

21  identity, or sex characteristics, as prohibited by the ACA.  Plaintiff argued that the ACA

22  statutorily obligated La Maestra "to act in such a manner so as to not deny her the

23  benefits of healthcare."  (*Opp'n.* [40] at 27.)  The Court disagrees with this reading of the

24  ACA's application to the discretionary function exception.  For La Maestra to have no

25  discretion in the hiring, supervision, or retention of Kamsi, it must have had "no rightful

26

27

28  investigation so long as the agency does not violate a mandatory directive."  *Vickers*, 228 F.3d at 951 (citing *Sabow v. United States*, 93 F.3d 1445, 1451–54 (9th Cir. 1996)).

option but to adhere to the directive." *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). "[I]ts actions must be governed by a specific federal statute, regulation, or policy." *A.M. v. United States*, No. 19-CV-1108-TWR-AGS, 2020 WL 6276021, 2020 U.S. Dist. LEXIS 198380 (S.D. Cal. Oct. 23, 2020) (citing *Berkovitz*, 486 U.S. at 536). While true that La Maestra's decision makers do not have discretion to violate constitutional rights or federal statutes, *Nat'l Union Fire Ins. v. United States*, 115 F.3d 1415, 1421 (9th Cir. 1997), the ACA does not set forth a specific course of action that La Maestra had to follow in determining whether and how to hire, supervise, and retain Kamsi. *See Fata v. United States*, No. 2:22-4399-MGL, 2023 WL 8455256, at *2, 2023 U.S. Dist. LEXIS 217034 (D.S.C. Dec. 6, 2023), *affirmed Fata v. United States*, 2024 U.S. App. LEXIS 9789 (Apr. 23, 2024). The ACA does not describe a specific course of action that La Maestra had to follow to accomplish the anti-discrimination goals of the ACA. The ACA "merely provide[s] guidance and bestow[s] discretion upon federal actors to implement the policy goals in the appropriate manner." *Id.* at *2. "No [identified] regulation or policy required [La Maestra] to do something that it failed to do. No individual violated any specific regulation or policy" identified. *Nat'l Union Fire Ins. v. United States*, 115 F.3d 1415, 1421 (9th Cir. 1997).

Although not binding authority, the reasoning of the Fourth Circuit panel in *Lins v. United States*, 847 Fed.App'x 159, 165–66 (4th Cir. Feb. 17, 2021), is also persuasive. There, a former patient brought an FTCA claim, alleging negligent hiring, supervision, and retention after his Veterans Affairs Medical Center therapist had a sexual relationship with him and the therapist's supervisors, who knew of the conduct, did not comply with VA policy on patient safety and abuse prevention. *Id.* at 160, 165. "Because the VA acted contrary to a mandatory [VA] policy that dictated how it should supervise its employees, its actions cannot be shielded by the discretionary function exception." *Id.* at

166 (citing *Gaubert*, 499 U.S. at 324).[4]  No such prescription of La Maestra's supervisory conduct, investigatory demands, or retention policies appears in this case.  The ACA is insufficiently specific about La Maestra's mandatory conduct in decisions to hire, supervise, or retain Kamsi as a heath care provider to preclude the application of the discretionary function exception to Plaintiff's claim.

Here, it is conceivable that the challenged actions (the hiring, supervision, and retention of Kamsi, particularly after La Maestra learned of other patients' allegations of his sexual misconduct) might have been restricted to conduct set forth by a federal law, rule, or policy, such that the decision-makers had no "rightful option but to adhere to the directive."  *See Berkovitz*, 486 U.S. at 536.  However, Plaintiff does not identify any federal statute, regulation, or policy binding La Maestra to a specific course of action in determining whether to hire Kamsi, how to supervise him, how to initiate an investigation after each allegation of sexual misconduct, the scope of that investigation, how or when to conclude such an investigation, or whether or how to retain Kamsi after he was accused of sexual misconduct with patients but neither investigation concluded that any misconduct occurred.  *See id.*; *A.M.*, No. 19-CV-1108-TWR-AGS, 2020 WL 6276021.

Having considered the applicable law and the arguments before the Court, La Maestra was not precluded from using its judgment and choice in deciding whether and how to hire, supervise, and retain Kamsi as it did.  *See Vickers*, 228 F.3d at 949.  As such, step one of the discretionary function exception is satisfied.

//

//

//

---

[4] No party raised, and the Court does not decide here, whether La Maestra's policies of hiring, supervision, or retention rise to the level required by *Berkovitz*, 486 U.S. at 536, on the basis of its designation as a federally funded facility under FSHCAA.  *But see A.M. v. United States*, No. 19-CV-1108-TWR-AGS, 2020 WL 6276021, 2020 U.S. Dist. LEXIS 198380 (S.D. Cal. Oct. 23, 2020) (citing *Berkovitz*, 486 U.S. at 536).

### 2.  Social, Economic, or Political Policy Considerations

The Court considers next "whether that judgment is of the kind that the discretionary function exception was designed to shield."  *Gaubert*, 499 U.S. at 322-23. In the Ninth Circuit, decisions involving hiring, supervision, and training routinely, but not categorically, fall within the discretionary function exception.  The distinction turns upon whether the challenged decisions involve policy judgments of the type Congress intended the exception to remove from judicial review.  *See Vickers*, 228 F.3d at 950 (collecting cases); *Nurse*, 226 F.3d at 1001–02; *Gager v. United States*, 149 F.3d 918, 921–22 (9th Cir. 1998).  This rule applies even to claims involving the negligent retention of an employee accused of sexual misconduct.  *Holy See*, 557 F.3d at 1083-85 (discretionary function in the context of FISA rather than FTCA); *see also Lins*, 847 Fed.App'x at 165–66 (discretionary function exception did not apply to claim that supervisors failed to report inappropriate conduct between VA employee and patient because clear VA policy "dictated how it should supervise its employees" on that matter); *Stout v. United States*, 721 Fed.App'x 462, 467 (6th Cir. Jan. 12, 2018); *A.M.*, 2020 WL 6276021, at *6; 2020 U.S. Dist. LEXIS 198380, at *16–20 (holding that the decision of a federally qualified health center, regarding supervision and retention of a doctor accused of sexual contact with patients, was subject to policy considerations until his license was suspended); *M.G. v. United States*, No. 19-CV-1252-TWR-AHG, 2020 WL 6271186, at *5–6 (S.D. Cal. Oct. 23, 2020) (holding that the discretionary function exception barred plaintiff's claim for negligent supervision and retention of a physician despite his history and practice of attempted sexual contact with patients).

In this case, as in *A.M.*, it may be that La Maestra, after learning of the other reports of Kamsi's sexual misconduct, decided to counsel him as it did and retain him "to balance insuring public safety and providing fairness to the accused, or to address staffing and funding concerns."  *See A.M.*, 2020 WL 6276021, at *6; *see also M.G.*, 2020 WL 6271186, at *5–6.  "These types of social, economic, or political policy considerations . . . are precisely the kinds of judgments the discretionary function

exception was designed to shield." *A.M.*, 2020 WL 6276021, at \*6.  There is no evidence that Kamsi was ever (1) determined to have committed the alleged conduct or (2) prohibited from practicing under his license.  No evidence supports the conclusion that La Maestra was not free to evaluate such social, economic, or political policy considerations here.  On the pleadings, undisputed facts, applicable law, and the arguments of the parties, the discretionary function exception applies to Plaintiff's claim against La Maestra for negligent hiring, training, supervision, or retention.

### 3.    <u>Plaintiff's Opposition Based Upon "Related Function"</u>

Plaintiff argued that the FSHCAA's "related function" provision, 42 U.S.C. § 233(a), permits her negligent hiring, supervision, or retention claim to proceed under the FTCA despite the discretionary function exception.  Plaintiff relied upon *Brignac v. United States*, 239 F. Supp. 3d 1367 (N.D. Ga. 2017), which similarly involved a plaintiff alleging sexual assault by a physician during treatment at an FSHCAA entity.  In *Brignac*, the plaintiff opposed the United States' motion to dismiss, under Fed. R. Civ. P. 12(b), and argued that while the discretionary function exception generally covers employment decisions, it does not apply when "the Government fails to act after notice of illegal behavior."  239 F. Supp. 3d at 1380–81.  The Northern District of Georgia considered all allegations true as it was required to do under Rule 12(b).  *Id.* at n.3.  Prior to hiring the offender, the United States knew or should have known, based on the allegations, that he had "an *admitted* record of sexually assaulting patients when employed as a physician," he had been previously terminated for "sexually assaulting three inmate patients" and, more than a month before he assaulted the plaintiff, the offender had been "indicted [] for sexually abusing an inmate."  *Id.* at 1371, 1381 (emphasis added).

Here, the undisputed facts are critically distinct from *Brignac*.  There is no prior indictment for conduct similar to the alleged sexual assault and misconduct.  In this case, the police did not intervene despite being involved in the first investigation; there is no

admission by Kamsi of any similar conduct at any time; and Kamsi denied the
allegations.  For these reasons, *Brignac* is inapposite.  The Court lacks jurisdiction to hear
Plaintiff's cause of action for negligent hiring, supervision, and retention, and
accordingly dismisses Plaintiff's "Claim One."  (*FAC* at 5–7.)

## C.    <u>Jurisdictional Limitations to Plaintiff's Claim Two for Negligence</u>

Plaintiff's remaining cause of action against the United States is "Claim Two" for
negligence.  The Government's motion argued that the Court lacks subject matter
jurisdiction to the extent that Plaintiff's negligence claim (1) arises out of the time when
Kamsi was not employed by La Maestra and was employed by a third-party service
provider who separately contracted with La Maestra, (2) arises out of Kamsi's sexual
misconduct while La Maestra employed him because such conduct falls outside the scope
of employment, (3) is based on alleged misrepresentations, including omissions, under
the FTCA's misrepresentation exception, and (4) is based on alleged sexual misconduct
under the FTCA's intentional tort exception.  (*See Motion* [Doc. 37] at 9.)  Finally, the
Government argued that, to the extent Plaintiff's negligence claim alleges medical
malpractice, the United States is entitled to summary judgment because (1) such a claim
is not cognizable based on sexual misconduct and (2) no evidence of negligence exists to
support a violation of the standard of care.  (*Motion* at 9–10.)

### 1.    <u>Employee of CSC</u>

The Court must resolve whether the FTCA's waiver captures the acts and
omissions of a doctor at a federally supported health care center who is employed by a
third-party service provider that contracted with the federally supported health care
center.  La Maestra hired Kamsi as its employee on November 16, 2020.  (*Fernandez
Decl.* at ¶ 17.)  Earlier, from September 18, 2018, through November 15, 2020, Kamsi
was employed instead by CSC, who contracted with La Maestra to provide chiropractors
for the newly established department.  (*Fernandez Decl*. ¶¶ 16–17.)  During this time,

1    there is no evidence that Kamsi contracted with La Maestra for the provision of services.

2    The Government moved for dismissal or summary judgment on any acts or omissions

3    during the time that CSC employed Kamsi on the basis that the FTCA's waiver does not

4    reach a physician providing health care services to a federally funded facility as an

5    employee of a third-party service provider who contracted with the medical center.

6    Plaintiff argued that Kamsi's provision of health care service to a federally supported

7    health care center makes Kamsi an independent contractor to La Maestra and therefore

8    covered by the FTCA's waiver under 42 U.S.C. § 233(g).

9        The Federally Supported Health Centers Assistance Act ("FSHCAA"), 42 U.S.C.

10   § 233, extended the FTCA's waiver of sovereign immunity to certain public health

11   entities, their employees, and qualified contractors receiving federal grants under 42

12   U.S.C. § 254(b).  42 U.S.C. § 233(a).  The FSHCAA also extends the FTCA's waiver of

13   sovereign immunity to "any *contractor* of such an entity who is a physician or other

14   licensed or certified care practitioner."  *Id.* at § 233(g)(1)(A) (emphasis added); *El Rio*

15   *Santa Cruz Neighborhood Health Ctr. v. United States HHS*, 396 F.3d 1265, 1276–77

16   (D.C. Cir. 2005).  A contractor must be an "individual" to receive FTCA coverage.  42

17   U.S.C. § 233(g)(5)(A)–(B).  While the FSHCAA expanded the FTCA's waiver "to

18   include certain contract physicians for medical malpractice," those contractors are limited

19   to individual physicians who contract directly with the federally supported health centers.

20   *Briggs v. United States*, No. 14-CV-5608-RBL, 2015 WL 4459323, at *4 (W.D. Wash.

21   July 21, 2015); *see also Dedrick v. Youngblood*, 200 F.3d 744, 746 (11th Cir. 2000 ("The

22   statutory expansion of governmental liability under the FTCA does not apply [] because

23   there is no direct contractual relationship between the eligible entity and the

24   physician."))[5]

---

[5]     This rule is also supported by the D.C. Circuit's analysis.  *El Rio Santa Cruz*, 396 F.3d at 1277.
In *El Rio Santa Cruz*, individual practitioners who contracted with an FSHCAA entity through their
professional corporations submitted sufficient evidence of individually signed contracts with the
FSHCAA entity and that the contracts included their individual professional guarantee, such that the

1    Plaintiff argued that Kamsi's acts or omissions, even while employed by CSC, are

2    covered by the FTCA's waiver of sovereign immunity because Dr. Rodriguez supervised

3    him at La Maestra.  The Court disagrees primarily because, as explained above, there is a

4    legally insufficient relationship in this case between Kamsi and La Maestra, prior to his

5    employment there, to support the FTCA's application.  However, even Plaintiff's

6    argument regarding Dr. Rodriguez's control over Kamsi fails to create a sufficient nexus

7    to support the waiver's application to Kamsi prior to La Maestra hiring him.  "A critical

8    element in distinguishing an agency from a contractor is the power of the Federal

9    Government to control the detailed physical performance of the contractor."  *United*

10   *States v. Orleans*, 425 U.S. 807, 814, 96 S. Ct. 1971, 48 L. Ed. 2d 390 (1976) (cleaned

11   up).  "Under the FTCA, the United States is subject to liability for the negligence of an

12   independent contractor only if it can be shown that the government had the authority to

13   control the detailed physical performance of the contractor and exercised substantial

14   supervision over its day-to-day activities."  *Laurene v. Dep't of Navy*, 50 F.3d 112, 113

15   (9th Cir. 1995) (citing *Orleans*, 425 U.S. at 814–15).  This day-to-day control must

16   amount to substantial supervision.  *Autery v. United States*, 424 F.3d 944, 957 (9th Cir.

17   2005)).  "[C]ircuit courts are unanimous in holding that a contract physician is not an

18   employee of the government under the FTCA."  *Carillo v. United States*, 5 F.3d 1302,

19   1304 (9th Cir. 1993) (collecting cases).  In order for a contract physician to be covered by

20   the FTCA's waiver, the type of control over the physician's conduct must be control over

21   the practice of medicine or the diagnosing and treatment of patients and not just control

---

panel remanded to the agency to reconsider FTCA coverage previously denied in the face of such
evidence.  *Id.*  Here, there is no evidence that Kamsi himself contracted with La Maestra, on his own or
through his professional corporation.  The evidence demonstrates that CSC, a professional service
provider, hired Kamsi as its employee.  There is no evidence to permit the Court to conclude that the
FSHCAA extended the FTCA waiver to cover Kamsi's provision of chiropractic services during the
time those services were provided through La Maestra's contract with CSC.  Absent clear waiver of
sovereign immunity, none may be created by the Court.  *See, e.g.*, *Dep't of the Army v. Blue Fox, Inc.*,
525 U.S. 255 (1999).

over hourly schedules or administrative duties. *Carillo*, 5 F.3d at 1305; *Sisto v. United States*, 8 F.4th 820, 829–30 (9th Cir. 2021).

Finally, in the context of the FTCA's overlap with another statute expanding FTCA waiver to federally funded health care centers, the Ninth Circuit has held that physicians practicing at a federally funded medical center through their employment with a third-party service provider are not employees or contractors for purposes of FTCA's waiver. *Sisto*, 8 F.4th at 828 (addressing the Indian Self-Determination and Education Assistance Act ("ISDEAA")'s expansion of FTCA waiver to medical malpractice claims against health service providers, where the facility contracted with a third-party service company for the provision of physicians). The *Sisto* plaintiffs argued that the treating physician qualified as a covered employee, despite the fact that they were employees of the third-party professional services provider. *Id*. at 824–26. Relying on the statutory text and the service contract at issue in the case, the Ninth Circuit concluded that no employer-employee relationship existed between the health care providers and the medical facility. *Id*. at 826. The Ninth Circuit's ISDEAA and contractual language analysis is not controlling in this case, but as here, the *Sisto* plaintiffs also argued that the functional control exerted over the physician by the facility was sufficient that they be covered employees. The Ninth Circuit rejected this argument because plaintiffs "point[ed] to nothing that shows that [the facility] had actual 'control over [the physician's] *practice of medicine*.'" *Id.* at 830 (quoting *Carillo*, 5 F.3d at 1305 and adding emphasis). Similarly, here, Plaintiff failed to provide evidence that Dr. Rodriguez controlled Kamsi's practice of chiropractic, as opposed to his schedule or administrative functions. As such, the Court concludes that La Maestra did not control Kamsi's "actions in administering care to a degree or in a manner that rendered him an employee of the government when he treated [Plaintiff]," at least with respect to the time when Kamsi was an employee of CSC. *See id.*

For these reasons, the Court lacks subject matter jurisdiction over Plaintiff's negligence claim to the extent it arises out of Kamsi's acts or omissions while he was

employed by CSC and was not individually in contract with La Maestra. This conclusion, on its own, permits Plaintiff's negligence claim against the United States during the time in which Kamsi was employed by La Maestra to proceed. Accordingly, the Court must turn to the Government's other grounds for its motion for summary judgment or dismissal.

### 2.  The Alleged Sexual Misconduct Falls Outside the Scope of Employment

To the extent that Plaintiff's negligence claim is based on her allegations of Kamsi's sexual misconduct during his chiropractic treatment of her, such conduct does not fall within the scope of Kamsi's employment. The FTCA's waiver of sovereign immunity is limited to certain torts committed by government employees acting within the scope of their employment. 28 U.S.C. § 1346(b). In addition, federal employees are immune from personal liability only when acting "within the scope of their official duties *and* the conduct is discretionary in nature." *Adams v. United States*, 420 F.3d 1049, 1052 (9th Cir. 2005) (emphasis in original). The scope of the employment is determined by the law of respondeat superior in the state of the alleged tort—here, California. *See Pelletier v. Fed. Home Loan Bank of San Francisco*, 968 F.2d 865, 876 (9th Cir. 1992) (abrogated on other grounds by *Pettibone v. Russell*, 59 F.4th 449, 453 (9th Cir. 2023)).

"Under California law, an intentional tort is within the scope of employment if it had 'a causal nexus to the employee's work' []or was 'an immediate outgrowth thereof . . . . a sexual tort will not be considered engendered by the employment unless its motivating emotions were fairly attributable to work-related events or conditions." *Ferguson v. Horizon Lines, Inc.*, 602 Fed. App'x 664, 666 (9th Cir. 2015) (internal citations omitted) (citing in relevant part *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 301 (Cal. 1995). "California courts have rarely held that employees who have engaged in sexual misconduct with third parties acted within the scope of their employment." *Tate v. United States*, 2018 WL 6444887, at *3 (C.D. Cal. Oct. 30, 2018); *see also Lowery v. Reinhardt*, 2008 WL 550083, at *6 (E.D. Cal. Feb. 27, 2008).

With regard to his treatment of patients, Kamsi's employment is limited to the conduct authorized by a chiropractor's California license.  Section 7 of the Chiropractic Act defines the scope of authorized practice by a license issued under the Act.  Cal. Bus. & Prof. Code § 1000-7; *Tain v. State Board of Chiropractic Examiners*, 130 Cal. App. 4th 609, 618 (2005).  A chiropractic license "shall authorize the holder thereof to practice chiropractic in the State of California as taught in chiropractic schools or colleges; and, also, to use all necessary mechanical, and hygienic and sanitary measures incident to the care of the body."  Cal. Bus. & Prof. Code § 1000-7; *Tain*, 130 Cal. App. 4th at 618–19.

In *Lowery*, the district court addressed the "scope of employment" limitation to an FTCA claim, where plaintiff alleged that her physician sexually assaulted her during her appointments at the federally funded healthcare facility and the two engaged in inappropriate sexual relations outside the facility as well.  2008 WL 550083, at *1.  In *Lowery* as here, California law applied to the scope of employment test.  *Id.* at *5.  There the district court concluded as a matter of law that no subject matter jurisdiction existed because "the alleged sexual relations . . . were not an 'outgrowth' of his employment, nor was the risk of sexual relations with patients 'inherent in his working environment' or 'typical' of or 'broadly incidental' to the enterprise of [the federally funded healthcare facility]."  *Id.* at *6.  Assuming that the conduct occurred as alleged, the court determined the physician's "actions . . . were taken for personal gratification, were unconnected to his employment, were not incidental to his duties as a physician, and were a substantial deviation from his duties as a physician for personal purposes."  *Id.*  In addition, the court concluded that the "actions were not a generally foreseeable consequence of [the facility's] enterprise" and that "the alleged sexual misconduct was personal in nature (not motivated or triggered by anything in the employment activity), and was unusual and startling in the context of a medical professional's duties."  *Id.*

Here, as in *Lowery*, the Court lacks subject matter jurisdiction over Plaintiff's negligence claim because Kamsi's alleged sexual misconduct falls outside the scope of Kamsi's employment.  The risk of sexual misconduct with patients is neither "inherent in

his working environment" or "typical" of or "broadly incidental" to the enterprise of chiropractic treatment. *Id.* (quoting *Lisa M.*, 12 Cal. 4th at 299). Neither was Kamsi's alleged sexual misconduct a generally foreseeable consequence of La Maestra's provision of his chiropractic services. *See id.* Finally, Kamsi's alleged sexual misconduct is not professional in nature but rather personal. *See id.* (citing *Delfino v. Agilent Tech., Inc.*, 145 Cal. App. 4th 790, 812 (Cal. Ct. Ap. 2007)). As such, the alleged offense falls outside the scope of his employment. For that reason, the Court lacks subject matter jurisdiction over Plaintiff's negligence claim to the extent it arises out of alleged sexual misconduct.[6]

Finally, the United States of America seeks partial summary judgment on any alleged medical malpractice claim on the grounds there is no expert evidence to support a conclusion that Kamsi violated the standard of care. The Government argued that Plaintiff's expert witness chiropractor, Wayne M. Whalen, D.C., does not opine on whether Kamsi failed to meet the chiropractic standard of care with respect to Plaintiff's treatment. The Government argued that Plaintiff's claims are for intentional sexual misconduct that fall outside of any professional obligations and not for Kamsi's negligence in chiropractic diagnosis or treatment. Whalen's report stated that "sexually

---

[6] In opposition, Plaintiff argued that Kamsi's failure to respond to her requests for admission rendered the request admitted and "conclusively established unless the court on motion permits withdrawal or amendment of the admission." *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995) (addressing Fed. R. Civ. P. 36(a)). The Government replied that Kamsi is a pro se defendant who never responded to the requests for admission and argued that Plaintiff's request lacked the requisite notification to a pro se party. The Government suggested that the admissions may not be used against Kamsi, based on the notification, and argued that they cannot be used against the United States, a distinct party. The Court need only resolve now that the failure to respond by pro se Kamsi may not be deemed admissions of the United States. *See* 8A C. Wright, A. Miller, & R. Marcus, *Federal Practice and Procedure* § 2264, at 571–72, 580 (1994); *Higgins v. Farr Fin.*, 2011 WL 13257721, at *2, 2011 U.S. Dist. LEXIS 170794, at *5 (N.D. Cal. Jul. 20, 2011); *Becerra v. Asher*, 921 F. Supp. 1538 (S.D. Tex. 1996), aff'd, 105 F.3d 1042 (5th Cir. 1997), citing 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2264 at 571–72 & 580 (1994), cert. denied, 522 U.S. 824 (1997).

23-cv-395-W-BLM

inappropriate conduct towards at least three patients clearly fell below the standard of care" and "kissing a patient, touching the breasts, touching the vaginal area, or inserting a finger in the anus would be considered gross and severe departures from the standard of care observed by other chiropractors." (*Whalen Report* [Doc. 40-3] at 77, 78.)  Because the Court concludes that the alleged conduct and omissions fall outside the scope of employment as a matter of law, the Court need not reach the sufficiency of the expert witness report.  With respect to claims remaining against Kamsi, the Court does not opine on the applicability or sufficiency of Plaintiff's expert witness report.  Kamsi is not precluded, as a result of this order, from raising this challenge in future.

### 3.   The Court Lacks Jurisdiction Over Plaintiff's Negligence Claim Based on Alleged Misrepresentations, Including Omissions

The Government also moved for dismissal or summary judgment on Plaintiff's negligence claim to the extent it is based on La Maestra's failure to warn her of other allegations by patients that Kamsi sexually assaulted them.  The misrepresentation exception to the FTCA's sovereign immunity waiver "covers both claims of negligent misrepresentation and claims of fraudulent misrepresentation," *Pauly v. U.S. Dep't of Agric.*, 348 F.3d 1143, 1151 (9th Cir. 2003), and applies to affirmative misstatements and omissions, *Green v. United States*, 629 F.2d 581, 584–85 (9th Cir. 1980) (holding the misrepresentation exception forecloses an FTCA claim that the government failed to provide information that it had a duty to provide).  Plaintiff's opposition does not address this basis for the Government's motion.  When the moving party meets its initial burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)); *Carmen*, 237 F.3d at 1030.  Therefore, to the extent that Plaintiff grounded her negligence claim in an argument that La Maestra should have disclosed to her, but did not, other reports against Kamsi of sexual misconduct, the Court dismisses

the claim for lack of subject matter jurisdiction under the misrepresentation exception to the FTCA.

### 4.    The Court Lacks Jurisdiction Over Intentional Torts Under the FTCA

The United States also sought dismissal or partial summary judgment of Plaintiff's negligence claim on grounds that the allegations of sexual misconduct or sexual assault are barred by the FTCA's intentional torts exception.  The FTCA excepts from its consent to liability "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."  28 U.S.C. § 2680(h); *Millbrook v. United States*, 569 U.S. 50, 52 (2013).  The operative First Amended Complaint did not describe any claim as one for assault or battery, but the factual basis for Claim Two for negligence arises from Kamsi's alleged sexual assault of Plaintiff.  In her opposition, Plaintiff did not argue that Kamsi committed an intentional tort.  Instead, Plaintiff described her claims as sounding in (1) medical malpractice and (2) negligent hiring, training, and supervision.  (*Opp'n* [Doc. 40] at 2, ll. 12–20; *id.* at 16–29.)  Therefore, neither the Complaint nor the opposition appear to set forth an intentional tort.  Nonetheless, the United States moves to dismiss or enter judgment on such a claim.  To the extent that Plaintiff grounded her claims against the United States in Kamsi's intentional sexual assault or battery of Plaintiff, the Court dismisses the claim for lack of subjection matter jurisdiction under the intentional tort exception to the FTCA.  No party raised, and the Court does not address, any intentional tort claim against Kamsi prior to his employment by La Maestra.

## III.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion to dismiss for lack of subject matter jurisdiction and accordingly **DISMISSES FOR LACK OF SUBJECT MATTER JURISDICTION** (1) Plaintiff's Claim One for negligent hiring, supervision, and retention and (2) Plaintiff's Claim Two for negligence to the extent consistent with

23-cv-395-W-BLM

this Order.  The Court **DENIES** the motion for partial summary judgment on the sufficiency of Plaintiff's expert evidence on the standard of care.  Plaintiff's claims against Kamsi, to the extent that the United States was not substituted for him, survive this Order.  Plaintiff's "Claim Four" is not addressed by this Order.

   **IT IS SO ORDERED.**

Dated:  December 12, 2024

_____
Hon. Thomas J. Whelan
United States District Judge

23-cv-395-W-BLM